**ORDERED in the Southern District of Florida on** 11/09/06



Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

In re:                                                              Case No. 05-29974-BKC-RBR

Dennis S. Farber,                                         Chapter 13

and

Stacey M. Farber

Debtors.
_____/

### ORDER DISMISSING CHAPTER 13 CASE FOR BAD FAITH

**THIS MATTER** came for evidentiary hearing before the Court on September 19, 2006 upon Creditor, Torrent Acquisition Company LLC, Amended Objection to Confirmation and Motion to Dismiss Bankruptcy Case. (C.P.48)  The Court having reviewed the Motion, the Court file, heard argument of counsel, considered the evidence, and being otherwise duly advised in the premises, finds as follows:

### Factual Background

In 1993 Premium Sales Corporation was involuntarily placed in a chapter 11 bankruptcy proceeding. *In re: Premium Sales Co.,* No. 93-12253-BKC-AJC, (Bankr. S.D. Fla. June 8, 1993).

During the *Premium Sales* case, in June of 1995, the Farbers entered into a settlement agreement with Mr. Tropin, the Chapter 11 Trustee. *See* Exhibits Supporting Creditors Motion to Dismiss at Tab 6, *In re: Farber*, No.05-29974 (Bankr. S.D. Fla. September 21, 2006)(hereafter "The Settlement"). The Settlement provided that after approval by the court, Mr. Farber, individually would agree to the entry of a $150,000 final judgment against him. *See id.* Furthermore, The Settlement provided that Mr. and Mrs. Farber, jointly and severally, would agree to entry of a final judgment against them in the amount of $50,000. *See id.* The judgments were to have an interest rate of 10% per annum. *See id.* The Farbers also agreed to several provisions regarding a potential bankruptcy petition. First, the final judgments are not subject to discharge in any bankruptcy proceeding. *See id.* Second, they would not file any bankruptcy proceeding until satisfaction of the final judgments. *See id.* Third, if they did file, they agreed that their obligations would not be discharged. *See id.* Fourth,"that [any bankruptcy petition] may be dismissed upon request of Tropin and that the Farbers will not object to or contest any motion of Tropin to dismiss such petition." *See id.* Finally, any petition filed while the final judgment debts remained outstanding would not be filed in good faith. *See id.*

The two final judgments were entered pursuant to the terms of The Settlement. Final Judgement Against Defendant, Dennis Farber (C.P. 191), *In re: Premium Sales Co.*, Adv No. 93-1462-BKC-AJC-A, (Bankr. S.D. Fla. July, 6, 1995) (hereafter "First Final Judgment"); Final Judgement Against Defendants Dennis Farber and Stacey Farber (C.P. 189), *In re: Premium Sales Co.*, Adv. No. 93-1462-BKC-AJC-A, (Bankr. S.D. Fla. July, 6, 1995)(hereafter "Second Final Judgment"). The First Final Judgment entered against Mr. Farber was for $150,000 and it provided that "[t]his final judgment may not be discharged in any bankruptcy proceeding." *See* First Final Judgment, *supra*. The Second Final Judgment against both Mr. and Mrs. Farber was for $50,000 and also provided that the judgment could not be discharged in any bankruptcy proceeding. *See* Second Final Judgement, *supra*.

Some 12 days after entry of the judgments just mentioned, the Farbers filed their first joint petition under Chapter 7. *In re: Dennis and Stacey Farber*, No.95-22769-BKC-PGH (Bankr. S.D. Fla July 18, 1995) (hereafter "Farber I"). Mr. Tropin, the Trustee in *Premium Sales Co.*, filed an adversary proceeding to determine the dischargeability of the judgments rendered against the Farbers. *See Tropin v. Dennis and Stacey Farber (In re: Dennis and Stacey Farber)*, Adv. No. 95-1471-BKC-PGH-A (Bankr. S.D. Fla, Oct. 30, 1995). Judge Hyman, then entered a final judgment in the adversary determining that the First Final Judgment and the Second Final Judgment were not subject to the discharge. *See* Final Judgement Against Defendants Dennis and Stacey Farber (C.P. 14), *In re: Dennis and Stacey Farber*, Adv. No.95-1471-BKC-PGH-A (Bankr. S.D. Fla. April 15, 1996). The Debtors received a discharge on January 23, 1996 as to all other creditors. *See* Order of Discharge (C.P.11), *Farber I, supra*.

Subsequently, Mr. Farber plead guilty to conspiracy and wire fraud. *See* Exhibits Supporting Creditors Motion to Dismiss at Tab 10, *In re: Farber*, No.05-29974 (Bankr. S.D. Fla. September 21, 2006). As a result, on March 29, 1999, he was sentenced to 18 months of federal custody and three years of supervised release. *See id.*

Approximately 70 days before his release from prison, Mr. and Mrs. Farber filed their second bankruptcy petition under Chapter 13. *In re: Dennis and Stacey Farber*, No.00-24087-BKC-RBR (Bankr. S.D. Fla. June, 30, 2006) (Hereafter "Farber II"). In their schedule listing unsecured nonpriority claims they listed a "Mr. Stropin" having a judgment claim that was "incurred over time" in the amount of $200,000. *See* Schedule F (C.P.1), *Farber II, supra*. The Debtors both signed and dated a declaration, under penalty of perjury, that the filed schedules "are true and correct" to the best of their knowledge. *See* Declaration Concerning Debtor's Schedules (C.P.1), *Farber II, supra*.

The Farbers then amended their schedules to reflect corrections in income (Schedule I) and expenses (Schedule J). However, they did not make any amendment to the judgment debt to

reflect any accrued interest. Mr. Tropin then filed a proof of claim listing the amount owed as $329,691.25. See Proof of Claim #5, *Farber II, supra*. He also moved to have the case dismissed, noting that up to that point (October of 2000) the debtors had "refused to pay a penny towards" the First and Second Final Judgements. See Motion to Dismiss at 3 (C.P. 13) *Farber II, supra*. Mr. Tropin also noted that the misrepresentation of the debt owed, resulting from the final judgments, allowed the Farbers to stay beneath the jurisdictional threshold needed to be eligible for a chapter 13 filing. See *id*. at 4. (Noting that the jurisdictional limit at that time under 11 U.S.C.§109(e) was $269,250 and the debt owed to Mr. Tropin was 329,691.25.).

The filing of *Farber II* had the effect of delaying the collection efforts of Mr. Tropin. Rather then deal with substantive issues raised by Mr. Tropin's motion, the Farbers moved to voluntarily dismiss the case under 11 U.S.C. §1307(c). Judge Hyman granted the dismissal with 6 months prejudice. See Order Dismissing Case (C.P. 16), *Farber II, supra*.

On October 16, 2005[1] the Farbers filed the current joint Chapter 13 petition. *In re: Dennis and Stacey Farber*, No. 05-29974-BKC-RBR (Bankr. S.D. Fla. October 16, 2005)(hereafter "Farber III"). Once again on their joint schedule of unsecured liabilities they list Mr. Tropin. This time they list Mr. Tropin as holding two different debts, the first for $50,000 and the second for $150,000. See Schedule F (C.P.1), *Farber III, supra*. Slightly more then 10 years have run since the Settlement. Once again, the Farbers failed to include any accrual of interest on the debt owed to Mr. Tropin. According to the proof of claim filed by Torrent Acquisition Company[2] ("Torrent") the outstanding balance of First Final Judgment at the time of petition was $530,260.44. The proof of claim also lists the balance on the Second Final Judgment, at the time of petition, to be $132,561.11. The

---

[1]October 17, 2005 was the effective date of Bankruptcy Abuse Prevention and Consumer Protection Act of 2005(BAPCPA). October 16, 2005 was the last day a debtor could file under the pre BAPCPA amendments.

[2] Mr. Tropin has assigned the First and Second Final Judgments to Torrent Acquisition Company.

chapter thirteen jurisdictional threshold at the time of the *Farber III* filing, was $307,675 or less, of unsecured debt. See 11 U.S.C. §109(e).

Further examination of the documents filed by Farbers reveals other curious misrepresentations. In response to the question on the petition of whether they had any prior bankruptcy cases in the last six years, the Farbers answered "none". See *Farber III*, C.P. 1. Even though *Farber II* was within the six year time period. The Farbers also failed to list, altogether, the pending breach of contract claim and associated litigation that Torrent has filed in state court. See *Farber III*, Claims # 12 and #13 (asserting a claim against each of the petitioners individually for $943,000).

### Conclusions of Law:

Section §1307(c) permits the court, after holding a hearing, to dismiss a case "for cause". See 11 U.S.C. §1307(c). Courts have concluded that a lack of good faith when filing the petition is sufficient to constitute "cause" under §1307(c). See *In re: Tovar*, No.04-17383-BKC-AJC, 2005 Bankr. LEXIS 1731, at *4-5 (Bankr. S.D. Fla Apr. 19, 2005); see also *In re: McGovern*, 297 B.R. 650, 655-56 (S.D. Fla. 2003)(stating "that the filing of a chapter 13 petition in bad faith may constitute cause for dismissal under 11 U.S.C. §1307(c)")(citations omitted). The proper inquiry, to determine whether the debtor filed his petition in good faith, is a totality of the circumstances test. See *In re: McGovern*, 297 B.R. at 656; *In re: Kitchens*, 702 F.2d 885, 888-89 (11th Cir. 1983); *In re: Watson*, No.06-14407-BKC-JKO (Bankr. S.D. Fla. Oct. 25, 2006)(citing *In re: Kitchens*, 702 F.2d 885 (11th Cir. 1983)).; accord *In re: Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999)("Bad faith, as a cause for the dismissal of a Chapter 13 petition with prejudice, involves the application of the 'totality of the circumstances' test.").

The totality of the circumstances test, in the Eleventh Circuit, is made up of the non-exclusive list of factors found in the *Kitchens* decision. See *In re: Kitchens*, 702 F.2d 885, 886 (11th

Cir. 1983) In that opinion the court listed 11 factors and shortly thereafter mentioned three more, which are reflected in the list below as #12-14. *See id.* at 888-89. The factors mentioned by the *Kitchens* court are:

(1) the amount of the debtor's income from all sources;

(2) the living expenses of the debtor and his dependants;

(3) amount of attorney's fees;

(4) probable or expected duration of the debtor's Chapter 13 plan;

(5) motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and likelihood of fluctuation in his earning;

(8) special circumstances such as inordinate medical expense;

(9) frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

(11) the burden which the plan administration would place on the trustee;

(12) the type of debt to be discharged and whether such debt would be nondischargeable;

(13) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court;

(14) extent to which the claims are modified and extent of preferential treatment among classes of creditors.

*See In re: Kitchens*, 702 F.2d at 888-89 (11th Cir. 1983).

*Kitchens*, applied the factors listed above in the context of 11 U.S.C. §1325(a). *See Kitchens, supra*, at 886. However, the application of these factors to 11 U.S.C. §1307(c) is proper, because the good faith inquiry under 11 U.S.C. §1325(a) and §1307(c) is substantially the same, and both

will examine largely the same relevant evidence. See In re: McGovern, 297 B.R. at 656; accord In re: Bandini, 165 B.R. 317, 319 (Bankr. S.D. Fla. 1994)(applying the Kitchens factors to dismiss the case under 11 U.S.C. §1307(c) for bad faith); In re: Gros, 173 B.R. 774, 776-7 (Bankr. M.D. Fla. 1994)(applying the Kitchens factors to dismiss under 11 U.S.C. §1307(c)); In re: Buis, 337 B.R. 243, 251 (Bankr. N.D. Fla. 2006) (applying the Kitchens factors even though the case had not yet come up for confirmation); In re: Love, 957 F.2d 1350, 1356-57 (7th Cir. 1992)(the Court noted "the similarities between these two good faith inquiries" and that the "same policy embodies the two good faith evaluations.").

Several cases have dismissed chapter 13 petitions for bad faith when faced with facts similar to those currently confronting this Court. From the Kitchens list above not all of the factors relevant to the inquiry before this court, the significant factors in this case are 5, 9, 12 and 13 and the court will also look at a new factor, the timing of the filing of the petition. The Court will now examine each in turn.

A particularly significant factor is the fifth one, "motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13." See In re: Kitchens, supra. The 11th Circuit addressed the issue of a debtor's motivations in In re: Waldron. See In re: Waldron, 785 F.2d 936, 941 (11th Cir. 1986) In Waldron, the debtors "were not financially distressed and had no real need to invoke the protections of the bankruptcy laws." See id. at 938. The sole purpose of their filing was to reject an option agreement on a parcel of land. See id. The Court concluded that "[t]he Waldrons' plan was thus proposed in a bad faith attempt to use and abuse Chapter 13 for a greedy and unworthy purpose." See id. at 941.

Similarly, in Bandini, this court decided that filing a chapter 13 petition with the intent of modifying a divorce agreement constituted bad faith. See In re: Bandini, 165 B.R. 317, 320 (Bankr. S.D. Fla. 1994)(the "primary, if not the sole motivation of [the debtor] in seeking relief under... chapter 13 is the modification of the [divorce agreement]..."). In that case, the debtor had entered

into agreement as part of a divorce proceeding, requiring the payment of $2800.00 per month in alimony. *See id.* at 318. The debtor then fell behind in his payments and his ex-wife sought to enforce the agreement in state court. *See id.* This court determined that if the debtor's state court appeal was successful, he would then move to voluntarily dismiss the bankruptcy petition; however, if he failed with his state court appeal then the debtor "seeks to circumvent the final judgment of the state courts through his chapter 13 plan." *See id.* at 320.

Under this factor, the Farbers have failed the good faith inquiry. The Farbers chapter 13 is in essence an attempt to escape the yoke of the First and Second Final judgments. According to the schedules and plan filed by the Farbers, they owe $35,126.00 in non-priority unsecured debts, excluding the judgments. *See* Schedule F (C.P.9), *Farber III, supra*. Their plan commits $56,782.05 to the unsecured creditors. *See* Plan (C.P. 12) *Farber III, supra*. Every other debt is proposed to be paid in full, this includes the mortgage, the payments on 2 Lexus luxury automobiles, and the IRS lien. *See id.* The Farbers appear to have a positive cash flow, since *Farber II* they have managed to accumulate about $75,000 in cash savings. *See* Schedule B (C.P. 9), *Farber III, supra*. This amount is enough to pay all of their outstanding unsecured creditors and finally begin paying some amount towards the Final Judgments. The only conclusion that can be drawn from this plan is that the entire petition was filed for the intent of escaping the Final judgments.

Furthermore, if the judgments are deducted from the list of liabilities provided by the Farbers, they are solvent. They would have assets of $710,933.00 and liabilities of $586.482.00 coupled with a net monthly income gain of $2,295.41. *See* Summary of schedules (C.P. 9) *Farber III, supra*. Again this demonstrates that they only debt they seek to avoid paying is the non-dischargeable debt owed to Torrent. This Court therefore concludes that the motivation of the Debtors in this Chapter 13 is to avoid paying the entire amount of the Final Judgements.

The ninth *Kitchens* factor examines the frequency that the debtor has sought protection

under the bankruptcy laws. *See In re: Kitchens, supra.* In *Gros*, the bankruptcy court dismissed the case for bad faith because of the number of times the debtors sought protection under the bankruptcy code. *See In re: Gros*, 173 B.R. 774, 777 (Bankr. M.D. Fla. 1994). In that case the debtor filed five bankruptcies of a period of approximately two years. *See id.* at 775. The debtor was seeking to hinder the collection efforts of the IRS for delinquent taxes. *See id.* at 776. The court held that "the debtor's multiple bankruptcy filings, coupled with involuntary dismissals is cause to dismiss this case with prejudice." *See id.* at 777.

Similarly, the Farbers are on their third petition and second under Chapter 13. They successfully obtained a discharge in *Farber I*. However, *Farber II*, was voluntarily dismissed on motion by the Farbers. *See Farber II*, (C.P. 16). The *Farber III* petition suffers from substantially the same defects that led to the voluntary dismissal of *Farber II*. Namely, that the Farbers are seeking to avoid paying their obligation to Torrent and that they are ineligible to be debtors under chapter 13. *Compare Farber II* (C.P.6)(Mr. Tropin's motion to dismiss for lack of good faith and eligibility), *with Farber III* (C.P.48 and 65)(Objecting to the plan and moving to dismiss the case because of a lack of good faith and eligibility).

Although *Farber III* is only their second attempt at a chapter 13 and their third petition in all, this Court believes that it is indicia of a lack of good faith. A repetitive pattern of filing need not occur within a condensed time period to be considered a pattern. The Farbers file for bankruptcy approximately every five years. *Farber I* was in 1995, *Faber II* in 2000 and *Farber III* in 2005. In each filing they have sought to discharge the debt currently held by Torrent. Aside from the *Farber I* case, as soon as the debt is determined to be exempt from discharge they seek to move to dismiss or covert the case. This is pattern is deemed to weigh against the Farbers in the good faith analysis.

Factor twelve, examines the type of debt and whether it is exempt from discharge. *See Kitchens, supra.* The analogous case is *McGovern*. In *McGovern*, the debtor owed " eighty to ninety

percent of his debts" because of judgment arising from state court litigation. See McGovern, 297 B.R. 650, 652 (S.D. Fla 2003). Furthermore, there was no evidence that any other creditor aside from the judgment holder was seeking to collect on any debt. See id. at 659. The court went on to note that the record is "strongly indicative" of an intent by the debtor to avoid paying a creditor. See id. at 660-61.

Similarly, in the Farbers case there is a strong indication that they are attempting to avoid payment on First and Second Final Judgements. At the outset this Court notes that the Final Judgements were agreed to be exempt from discharge by the Farbers in the Settlement and were then declared exempt from discharge by, a now final, court order in Farber I. Over the last ten years they have not paid anything towards the debts held by Torrent. Furthermore, they commenced Faber I, just 12 days after agreeing to that the debt would be exempt from discharge. Farber II was dismissed when they could no longer discharge the debt arising from the Final Judgments. Tellingly, they did not re-file at the expiration of the prejudice period after the Farber II dismissal, in an attempt to discharge any of the other debts. Finally, in the interim since Farber II, they have paid nothing towards the debt just as they failed to pay anything between Faber I and Farber II. Consequently, this factor also weighs against the Farbers.

The next factor to be examined is thirteen, the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court. See Kitchens, supra. In Tovar, the bankruptcy court granted the creditors motion to dismiss for bad faith filing. In re: Tovar, No. 04-17383, 2005 Bankr. LEXIS 1731, at *6 (Bankr. S.D. Fla. April 19, 2005). The debtor, in Tovar, filed his petition listing only three debts on his schedules. See id. at *2 (listing only $30,000 to owed Mercedes Benz, $8,862.00 owed to Citiadvantage credit card, and $250,000 owed to Roger Silverio). The Debtor subsequently amended his schedules adding several assets, a mortgage on his home, several other credit cards, and a loan for $50,000. See id. at *3. Significantly, the debtor failed to disclose income earned for work performed in Panama or from

another job held here in the United States. *See id.* Finally, the debtor failed to disclose the existence of payments made in the 90 days prior to filing the petition. *See id.* Furthermore, the debtor filed the petition shortly before an arbitration award of $212,030.60 became final for execution purposes. *See id.* at 5. The court determined that the "timing of the filing of the amended schedules is suspicious and leads [the] Court to believe that the omissions in the originally filed schedules were indeed willful." *See id.* at *6. Based on those facts the court granted the motion to dismiss the case because it was a bad faith filing. *See id.*

The Farbers have been grossly inaccurate in listing their debts, both in *Farber II* and *Farber III*. In their *Farber III* schedules they list the amount owed to Torrent to be $150,000 and $50,000 respectively because of the two Final Judgments. *See* Schedule F (C.P. 1), *Farber III*, *supra*. This does not reflect the 10 years of interest that has been accruing since the Settlement was agreed to. Furthermore, this is the second time that the Farbers have incorrectly listed their debts. In *Farber II*, they listed amount owed as $150,000 and $50,000 respectively. Mr. Tropin then filed a claim, in *Farber II*, for a claim of $329,691.25 reflecting the amount owed for both debts. *See* Exhibits Supporting Creditors Motion to Dismiss at Tab 13, *In re: Farber*, No.05-29974 (Bankr. S.D. Fla. September 21, 2006).

With full knowledge that the current amount owed on the Final Judgments was more then the original principal amount the Farbers again listed the amount owed to Torrent as $150,000 and $50,000. This is can be seen as nothing more then an attempt to mislead this Court that the Farbers meet the jurisdictional threshold of chapter 13.[3] At the time of filing the Farbers knew that they owed at least $329,691.25 as of October 2000, and should have known that some 5 years

---

[3]The maximum amount of unsecured debt that a chapter 13 debtor may have at the time the Farbers filed their petition is $307,675. *See* 11 U.S.C. §109(e).

later the amount would be much higher. See *Farber III,* Proof of Claim #14 and #15 (the total amount now owed under the Final Judgments is $530,260.44 on the First Final Judgment and 132,561.11 on the Second Final Judgment.). The amount owed in October of 2000 was already beyond the jurisdictional limit of a chapter 13 debtor in 2005. Furthermore, Mr. Farber concedes that he is ineligible to be a chapter 13 debtor, because of the amount owed on the Final Judgments. See Motion to Split Case (C.P. 60), *Faber III, supra.*

The Farbers also failed to list a claim of $948,000 also owed by them to Torrent resulting from the breach of contract action brought in state court. See Complaint, *Torrent Holdings Inc. v. D.F.T. Inc.,* Case No. 04-181932 (Fla. 17th Cir. Ct. July 22, 2005). While liability may be disputed as to whether this debt owed, the debt is non-contingent and unliquidated. The 11th Circuit held in *United States v. Verdunn,* that a liquidated debt "relates to the amount of liability, not the existence of liability". See *United States v. Verdunn,* 89 F.3d 799, 802 (11th Cir. 1996). A debt is non-contingent as long as the events that give rise to it occurred prior to the petition. See *Hounsom v. United States,* 325 B.R. 319, 324 (M.D. Fla. 2005)(citations omitted). Therefore, the $948,000 should have been listed on the petition as a claim, even though it has not yet been reduced to judgment. The reasonable inference that this Court draws is that leaving the claim off was intended to allow the Farbers to remain below the jurisdictional threshold.

Finally, the Farbers failed to answer truthfully whether they had previously filed a bankrtupcy petition in the last six years. *Farber II,* was filed in 2000 and *Farber III* was filed in 2005 therefore the Farbers knew that they had filed a petition in the last six years. See Petition (C.P.1), *Farber III,supra*. This is similar to the inaccuracies found in the *Faber II* petition, where the Farbers stated that the judgments against them were "incurred over time" and that the amount owed was a single debt of $200,000. When all of these misstatements and inaccuracies are taken together they

evidence that the Farbers have attempted to mislead this Court. Consequently, this *Kitchens* factor weighs heavily against the Farbers.

The final factor that this Court will examine is the issue of timing of the petition. The bankruptcy court in *Buis*, considered the timing of the petition in the context of bad faith motion against the debtors. See *In re: Buis*, 337 B.R. 243, 250 (Bankr. N.D. Fla. 2006) (listing "the timing of the petition" as a factor to consider when conducting a *Kitchens* analysis). In *Buis*, the court looked suspiciously on the timing of the petition because: (i) it was filed just before a final judgment in state court was entered and (ii) the granting of security interest just outside of the 90 day preference period. See *id.* at 252-3.

In the Farbers case the timing of the petition raises an interesting and unique question. Whether the filing of the petition on October 16, 2005, the last day to do so before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), constitutes an indicator of bad faith. This Court believes that *Farber III* is "last gasp" attempt to discharge the Final Judgements, before the effective date of provisions that may be detrimental to the Farbers ability to file a petition. An example of the adverse provisions, which the Farbers may be subject to, is §522(q). Section §522(q) may limit their homestead exemption to $125,000 if a court determined that the Farbers "owe a debt arising from... fraud, deceit, or manipulation in a fiduciary capacity..." See 11 U.S.C.§522(q)(1)(B)(ii). Mr. Farber's convictions were for conspiracy and wire fraud, which may be sufficient to meet the requirements of §522(q). Therefore, at least one of the amendments may have a material effect on any bankruptcy petition filed after October 17, 2005.

This Court therefore concludes that the filing of the petition on October 16, 2005 was indicative of bad faith. The Court believes that *Farber III* is an attempt to discharge the Final Judgments, one last time, before the more stringent provisions of the BAPCPA become effective.

Further, this Court believes that the debtors undertook this attempt with actual knowledge that they were over the jurisdictional limit and therefore ineligible for Chapter 13 relief. The Court is also certain that the latest filing is not a result of new and genuine financial hardship afflicting the Farbers since their last ill advised attempt (*Farber II*) or their successful discharge in *Farber I*.

Based on the foregoing reasons, the Court, determines that the Farbers have failed the totality of the circumstances test as set out in *Kitchens*. Furthermore, the Farbers appear to have acted in bad faith since the Settlement right through to the current case. As a consequence of their actions the case will be dismissed.

As one final matter this court must address the Motion by the Farbers to split their cases and have Mrs. Farber[4] continue in Chapter 13 and Mr. Farber converted to Chapter 7. *See Farber III*, (C.P.59). The Court finds the reasoning of *Myers v. S. Med. Supply Co.* persuasive. In that case the district court upheld the determination by the bankruptcy judge that a bad faith dismissal under 11 U.S.C.§1307(c) also precluded a conversion to chapter 7. *Myers v. S. Med. Supply Co. (In re Myers)*, 334 B.R. 136,145 ( E.D. Pa. 2005) (concluding that the bankruptcy court did not abuse its discretion in denying-debtor's request to convert to Chapter 7, having already dismissed the Chapter 13 case for bad faith.). Therefore, as in *Myers*, this Court will deny the motion convert Mr. Farber's case because it has found that filing of their petition was in bad faith.

Based on the foregoing it is not necessary for the Court to determine if the petition could or should be split. The lack of good faith is imputed to them jointly, since they both:(i) signed and filed the petition; (ii) knew about the inaccuracies in their joint schedules; (iii) participated in all of

---

[4]The Court does not need to address the issue of Mrs. Farber's eligibility under Chapter 13. Her salary of $4,000 a month would be unable to fund a chapter 13 plan. Especially given the luxury lifestyle the Farbers enjoy, with two Lexus automobiles and recently purchased home.

the previous filings; (iv) had the same motivation when they filed *Farber III*. Therefore, the Court believes it is proper for the Farbers who came to this court together to leave this court together.

Therefore it is, **ORDERED and ADJUDGED** as follows:

1. The Motion to Dismiss to Dismiss Bankruptcy Case (C.P.48) is **GRANTED** due to a lack of good faith pursuant to 11 U.S.C. §1307(c) as discussed above.

2. This Case is dismissed with prejudice for a period of 6 months, during which the Debtors may not file any bankruptcy case under any chapter of the United States Bankruptcy Code, Title 11 U.S.C. §101, et seq. In any Bankruptcy Court in the United States.

3. The Motion to Convert Mr. Farber to Chapter 7 (C.P. 60) is **DENIED**.

4. The Motion to Split the Joint Petition (C.P. 59) is rendered **MOOT** by the holdings above.

The clerk shall furnish copies to:

Michael J. Brooks, Esq
Dennis Scott Farber
Stacy Morris Farber
Robin R. Weiner, Trustee
Thomas M. Messana, Esq.
Office of the US Trustee
David N. Stern, Esq.